**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
In re:                              )
                                    )
DENTURE CREAM PRODUCTS              )   Miscellaneous Action No. 13-384
LIABILITY LITIGATION                )   (RBW)
                                    )
                                    )
                                    )
_____)

**MEMORANDUM OPINION**

The Procter & Gamble Distributing LLC, The Procter & Gamble Manufacturing Company, and The Procter & Gamble Company (collectively, "Procter & Gamble") are defendants in a multidistrict litigation pending in the United States District Court for the Southern District of Florida, In re Denture Cream Products Liability Litigation, Civ. No. 09-2051 (S.D. Fla.). Currently before this Court is Procter & Gamble's Motion to Compel the Production of Documents from Sarfez Pharmaceuticals, Inc. and Sarfez USA, Inc. and Memorandum of Law in Support ("Defs.' Mem."). After carefully considering the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendants' motion.

**I. BACKGROUND**

The plaintiffs in the In re Denture Cream Products Liability Litigation multidistrict litigation "allege that excessive use of the denture cream product, Fixodent, blocks copper absorption and ultimately leads to neurological injury." Defs.' Mem. at 2. In connection with the prosecution of their case, the plaintiffs paid third parties Dr. Salim Shah and his companies,

---

[1] In addition to those filings already identified, the Court considered the following submissions by the parties in reaching its decision: Respondents' Opposition to Petitioners' Procter & Gamble Distributing LLC, Procter & Gamble Manufacturing Company and Procter & Gamble Company's Motion to Compel ("Resp'ts' Opp'n"); and the defendants' Reply in Support of Procter & Gamble's Motion to Compel the Production of Documents from Sarfez Pharmaceuticals, Inc. and Sarfez USA, Inc. ("Defs.' Reply").

1

Sarfez Pharmaceuticals, Inc. and Sarfez USA, Inc. (collectively, the "Sarfez Entities") "over $300,000 to perform a study in India," known as the Zinc/077/12 Study. Id. at 2; id., Exhibit ("Ex.") B (November 26, 2012 Declaration of Dr. Salim Shah, Esq. ("2012 Shah Decl.")) ¶ 4 ("Sarfez Pharmaceuticals is responsible for implementing [the] [Z]inc/077/12 [S]tudy that is being conducted in India.")). The Study is intended "to determine how much copper, if any, is blocked, during exposure to Fixodent." Id., Ex. B (2012 Shah Decl.) ¶ 4. According to Dr. Shah, the Study was to be completed and its results delivered by December 28, 2012, to Dr. Frederick K. Askari, who designed the Study. Id., Ex. B (2012 Shah Decl.) ¶¶ 4, 13.

The defendants "initially sought discovery regarding the Zinc/077/12 Study from [the] Plaintiffs, propounding document requests and interrogatories on [the] Plaintiffs on December 10, 2012." Defs.' Mem. at 3. The plaintiffs, however, represented that they did not have all of the documents relating to the Study, and responded that the requests were "more appropriately directed to Sarfez Pharmaceuticals." Id. at 3-4; id., Ex. D (Plaintiffs' Responses and Objections to Defendants The Procter & Gamble Distributing, LLC and The Procter & Gamble Manufacturing Co. Requests for Production Re Zinc/077/12 Study) at 5, 8-12, 14-16, 19-22, 25-31.

The defendants therefore sought the Zinc/077/12 Study, its underlying raw data, and other related materials from the Sarfez Entities. Defs.' Mem. at 4; id., Ex. G (February 1, 2013 Subpoenas). The Sarfez Entities do not deny, see generally Resp'ts' Opp'n, that they "served no objections or responses to the Sarfez Subpoenas, nor did they produce a privilege log," Defs.' Mem. at 4. Instead, over the next two and a half months, the Sarfez Entities "produced in excess of 1500 pages of responsive discovery material," Resp'ts' Opp'n at 3, but the defendants contend that the Sarfez Entities "failed to produce numerous responsive documents," Defs.' Mem. at 5.

2

The Sarfez Entities reply that they have been "cooperative at every request . . . and ha[ve] produced all documents within [their] possession and control." Resp'ts' Opp'n at 3.

The defendants have now moved to compel the Sarfez Entities to: "(i) produce all responsive documents; (ii) produce their computers for forensic imaging; and (iii) reimburse Procter & Gamble for the fees and costs incurred in connection with the Motion." Defs.' Mem. at 13-14.

## II. STANDARD OF REVIEW

A court from which a subpoena issues pursuant to Federal Rule of Civil Procedure 45 has the power to compel the production of documents from a nonparty witness. See In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998). In considering a motion to compel the production of discovery, Rule 45 "'requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden.'" In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. 7, 9 (D.D.C. 2010) (quoting Watts v. SEC, 482 F.3d 501, 508 (D.C. Cir. 2007)). "The burden lies on the party resisting discovery to show that the documents requested are either unduly burdensome or privileged." Id.; Fed. R. Civ. P. 45(d)(1)(D); see also Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC, 286 F.R.D. 8, 11 (D.D.C. 2012) ("The person objecting to production has a heavy burden to show that the subpoena should not be enforced." (citing Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984)).

When deciding a motion to compel, a court must consider first whether the discovery sought is relevant. Discovery obtained from a nonparty pursuant to Rule 45 has "the same scope as provided in Rule 26(b), thus promoting uniformity." Advisory Committee Note to 1946 Amendment to Rule 45(d). In general, under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ.

3

P. 26(b)(1). For purposes of discovery, relevance is liberally construed. Burlington Ins. Co. v. Okie Dokie, Inc., 368 F. Supp. 2d 83, 86 (D.D.C. 2005) (citing Rule 26(b)(1)); Food Lion, Inc. v. United Food & Comm'l Working Int'l Union, 103 F.3d 1007, 1012 (D.C. Cir. 1997)). Thus, "[t]he term relevance at the discovery stage is broadly interpreted to include information which is not admissible at the trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence." Covertino v. DOJ, 565 F. Supp. 2d 10, 12 (D.D.C. 2008). Therefore, with respect to a Rule 45 subpoena, "'[a] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" Hesco Bastion Ltd. v. Greenberg Traurig LLP, No. 09-0357, 2009 WL 5216932, at *4 (D.D.C. Dec. 23, 2009) (citation omitted).

"The text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena," Millennium TGA, Inc., 286 F.R.D. at 11 (citing Fed. R. Civ. P. 45(c)(1)), which thus also requires

> district courts in [a]ll discovery to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Watts, 482 F.3d at 509 (citations and quotation marks omitted). Accordingly, a court considering a motion to compel production pursuant to Rule 45 "has the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope" of the Federal Rules of Civil Procedure. Millennium TGA, Inc., 286 F.R.D. at 11.

## III.  LEGAL ANALYSIS

**A.**     **Whether the Sarfez Entities have Waived Their Objections**

As an initial matter, the Court notes that a nonparty may respond to a Rule 45 subpoena by "serv[ing] on the party or attorney designated in the subpoena a written objection" which "<u>must</u> be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(c)(2)(B) (emphasis added).  "'The failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections.'"  Alexander v. FBI, 186 F.R.D. 21, 34 (D.D.C. 1998) (citation omitted).  "However, 'in unusual circumstances and for good cause . . . the failure to act timely will not bar consideration of objections.'"  Id. (citation omitted).  Unusual circumstances include those where

> (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; . . . (2) the subpoenaed witness is a nonparty acting in good faith; . . . and (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged [the] legal basis for the subpoena.

Id. (citation omitted).

Although the Sarfez Entities did not object to the defendants' subpoenas within the allowed time frame, see Fed. R. Civ. P. 45(c)(2)(B); Defs.' Mem. at 4, their counsel and defendants' counsel "were in contact concerning [the Sarfez Entities'] compliance prior to the time [they] challenged [the] legal basis for the subpoena[s]," Alexander, 186 F.R.D. at 34; Defs.' Mem. at 4-5.  Accordingly, the Court will consider the Sarfez Entities' objections to the legal basis for the subpoenas.

**B.     Relevance**

The defendants argue that the discovery they seek "bears directly on the issue of causation, the primary issue currently in dispute" in the multidistrict litigation.  Defs.' Mem. at 7.  As noted above, "'[a] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'"  <u>Hesco Bastion Ltd.</u>, 2009 WL 5216932, at *4 (citation omitted).  Here, the plaintiffs "have already affirmatively represented that they intend to rely on the Zinc/077/12 Study as proof of causation."  Defs.' Mem. at 7 (citing Defs.' Mem., Ex. O (Second Supplemental Expert Witness Report of Frederick Askari, M.D.) at 1).  Accordingly, there is more than a mere "'possibility that the information sought may be relevant to the claim or defense of any party.'"  <u>Hesco Bastion Ltd.</u>, 2009 WL 5216932, at *4 (citation omitted).  The Court therefore finds that the discovery that the defendants seek from the Sarfez Entities, which includes not only the Zinc/077/12 Study but also underlying data and nonprivileged correspondence relating to the Study and its methodology, is relevant within the meaning of Rules 26(b) and 45.  <u>See</u> <u>Barnes v. Dist. of Columbia</u>, 289 F.R.D. 1, 19-24 (D.D.C. 2012) (compelling the production of data and information associated with reports because, "[i]n order for the [requesting party] to understand fully the . . . [r]eports, they need to have all the underlying data and information on how" the reports were prepared).

The Sarfez Entities contend that the defendants have "exceeded the purpose and scope of a motion to compel by inappropriately raising issues destined for the [United States District Court] in Southern Florida in what should be a <u>motion in limine</u>," and thus refuse to respond to the defendants' assertion that the Zinc/077/12 Study and related materials are potentially relevant to the plaintiffs' case.  Resp'ts' Opp'n at 3.  The Sarfez Entities are mistaken.  The defendants

need not demonstrate, and this Court need not determine, whether the discovery sought will be admissible at trial. See Covertino, 565 F. Supp. 2d at 12. Rather, the issue is whether the discovery sought is potentially relevant. Hesco Bastion Ltd., 2009 WL 5216932, at *4. Here, the defendants seek materials related to a study upon which the plaintiffs might rely to make a showing of causation, Defs.' Mem. at 7, and such materials are thus potentially relevant to the plaintiffs' claims. They are discoverable, and whether the materials are admissible is an issue that must be determined at a later date, and by a different court.

**C.     Adequacy of the Sarfez Entities' Compliance with the Subpoenas**

The defendants argue that the Sarfez Entities' production of documents has been incomplete and has not complied with the obligations set forth in Rule 45. Defs.' Mem. at 5. Rule 45 mandates that documents be produced "as they are kept in the ordinary course of business or . . . organize[d] and label[ed] . . . to correspond to the categories in the demand." Fed. R. Civ. P. 45(d)(1). The obligation to produce information in the manner that it is kept "in the ordinary course of business" applies equally to traditional hard copy documents and to electronically stored information, unless the subpoenaing party specifies a different manner of production. Id. 45(d)(1)(A)-(B). Several courts have held that emails should thus be produced along with their attachments. See, e.g., PSEG Power N.Y., Inc. v. Alberici Constructors, Inc., No. 1:05-cv-657, 2007 WL 2687670, at *12 (N.D.N.Y. Sept. 7, 2007) ("Without question, attachments should have been produced with their corresponding emails such as are kept in the usual course of business."); CP Solutions PTE, Ltd. v. Gen. Elec. Co., No. 3:04cv2150, 2006 WL 1272615, at *4 (D. Conn. Feb. 6, 2006) ("Defendants chose to provide the documents in the manner in which they were kept in the ordinary course of business. Attachments should have been produced with their corresponding e-mails."); see also Miller v. IBM, No. C 02-2118, 2006

WL 995160, at *7 (N.D. Cal. Apr. 14, 2006) (ordering the production of "relevant emails with the attachments . . . or . . . specific references (i.e., date of production, Bates and/or page numbers, and labels) which enable IBM to identify which attachments belong to which emails").

Here, the defendants represent that:

- Documents containing relevant data generated in connection with the [Zinc/077/12 Study] are missing numerous pages, including an analytical report prepared by the researchers in India that is missing the first 50 pages. . . .

- Multiple analytical reports prepared by the researchers in India and transmitted to Dr. Shah were not produced at all. . . .

- Numerous documents containing data that Dr. Shah was scheduled to receive from India were not produced, including statistical analysis of the [Zinc/077/12 Study] samples. . . .

- Raw data from the laboratory in India, including data used to generate certain of the summary tables prepared by the researchers in India was not produced. . . .

- Two signed study protocols which were apparently submitted for ethical approval were not produced. . . .

Defs.' Mem. at 10 (citing Defs.' Mem., Exs. S, V (document missing first 50 pages and reflecting data that was not produced); id., Exs. T, U, W (emails discussing attachments that were not produced)). Further, the defendants represent that:

- Email correspondence was produced in a disassembled and convoluted manner, with attachments divorced from parent emails, making it nearly impossible for Procter & Gamble to identify which email corresponds with which attachment.

- Numerous relevant email attachments were simply never produced, including many that cannot be otherwise obtained from Plaintiffs and which appear to contain critically important information regarding the procedures and details of the study. . . .

- Numerous pages of emails contained within a single email chain were not produced. . . .

8

- Several emails sent by Dr. Shah were not produced in their original version, but instead appear only within larger email chains that do not identify (let alone include) the corresponding attachments. . . .

Id. at 9.

Given that there is evidence in the documents produced to date which shows that certain other documents have been wrongfully withheld, and given also the failure to produce emails in a manner that allows the defendants to match the emails with their attachments, the Court finds that the Sarfez Entities' document production to date does not comply with the requirements of Rule 45.

The Sarfez Entities do not deny the defendants' characterization of the document productions. Instead, they argue first that the defendants "have failed to demonstrate that the documents they seek actually exist," and second suggest that the defendants must "depose the custodian of the records" before filing a motion to compel. See Resp'ts' Opp'n at 4-5.

First, in the face of the evidence presented by the defendants, see Defs.' Mem. at 10, Exs. S-W, the Sarfez Entities' implication that the documents in question might not exist seems disingenuous. As the defendants rightly argue, Defs.' Reply at 2, if "the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed," then the moving party has provided evidence sufficient to support a motion to compel, Huthnance v. Dist. of Columbia, 255 F.R.D. 285, 289 (D.D.C. 2008). Where, as here, the defendants' "allegations are amply supported in that [some] of the documents [the Sarfez Entities] produced reference[] other documents and materials," id., a motion to compel is appropriate.

Second, the Sarfez Entities provide no case law to support the notion that the defendants must conduct a deposition in advance of seeking documents, and the Court can find none.

Indeed, Rule 45 itself states that a subpoena must "command each person to whom it is directed to do the following at a specified time and place: attend and testify; [or] produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control . . . ." Fed. R. Civ. P. 45(a)(1)(iii).  There is no requirement that any particular type of discovery be sought before another.  Cf. Alexander v. FBI, 192 F.R.D. 37, 40-41 (D.D.C. 2000) (noting that Rule 45 does not require parties to choose between depositions and document requests and granting motion for deposition of custodian of records after nonparty had already responded to request for documents).  In fact, Rule 26 provides that, after the parties have conducted the discovery conference required in Rule 26(f), and "[u]nless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice[,] methods of discovery may be used in any sequence."  Fed. R. Civ. P. 26(d)(2)(A).

Here, the In re Denture Cream Products Liability Litigation docket reflects that the parties conducted the requisite Rule 26(f) conference.  And there is no indication on that docket or the docket in this case of an agreement or order preventing the defendants from seeking document discovery from the Sarfez Entities prior to deposing the custodian of the records at issue, nor have the parties presented evidence of such an agreement or order.  The Court therefore rejects the Sarfez Entities' argument that the defendants' motion to compel is premature.

**D.    Whether Full Compliance with the Subpoenas Would Present Undue Burden and Privilege**

The Sarfez Entities have not argued that any of the requested documents are privileged. See generally Resp'ts' Opp'n.  However, they do represent that they "do not have the unlimited

resources like [Procter & Gamble] to be challenging [the defendants'] motion."[2] Id. at 3.  While the Court can thus infer that there is some burden on the Sarfez Entities in producing records responsive to the defendants' subpoenas, the Sarfez Entities fail to present evidence or arguments "that the documents requested are . . . unduly burdensome."  In re Micron Tech., Inc. Sec. Litig., 264 F.R.D. at 9 (emphasis added); Fed. R. Civ. P. 45(d)(1)(D).  The Court will nonetheless consider the burden on the Sarfez Entities because, as the District of Columbia Circuit has stated, "district courts in [a]ll discovery [are required] to consider a number of factors potentially relevant to the question of undue burden."  Watts, 482 F.3d at 509 (outlining factors that courts must consider) (citations and quotation marks omitted).

First, there is no indication that the discovery is "unreasonably cumulative or duplicative."  Id.  As discussed above, the defendants issued subpoenas to the Sarfez Entities only after first seeking the discovery from the plaintiffs.  And the Sarfez Entities do not dispute, see generally Resp'ts' Opp'n, the defendants' assertion that they remain unable to obtain the majority of the various documents, email attachments, and data from the plaintiffs, Defs.' Mem. at 12.

Second, and for the same reasons, the discovery appears to generally be unavailable from other sources.  Further, the Sarfez Entities are responsible for conducting the Zinc/077/12 Study.  It thus seems most convenient for the Sarfez Entities to directly provide the Study and other related discovery to the defendants.

Finally, the burden on the Sarfez Entities does not outweigh the likely benefit.  Given the plaintiffs' indication that they will rely on the Zinc/077/12 Study as evidence of causation, "the needs of the case, . . . the importance of the issues at stake in the litigation, and the importance of

---

[2] There is some suggestion in email correspondence provided by the defendants that the cost of document production is a concern, see, e.g., Defs.' Mem., Ex. K (email correspondence) at 1, and that the Sarfez Entities' counsel has had medical issues, see, e.g., id., Ex. I (email correspondence) at 7; see also ECF No. 8 ¶¶ 4, 8, 11, 13.

the proposed discovery in resolving the issues," Watts, 482 F.3d at 509, all counsel in favor of requiring the Sarfez Entities to produce the requested discovery.  However, the Court has little information about the amount in controversy or the Sarfez Entities' resources.  The defendants do represent that the plaintiffs paid the Sarfez Entities "over $300,000" for their services with respect to the Zinc/077/12 Study, Defs.' Mem. at 2, but Dr. Shah's declaration,[3] which is attached to the Sarfez Entities' opposition brief, states that the plaintiffs still owe him over $55,000 for completion of the Study, Resp'ts' Opp'n, Attachment 1 (May 16, 2013 Declaration of Salim Shah, PhD, JD ("May 2013 Shah Decl.")) ¶¶ 3-5.  The record is otherwise devoid of evidence that the Sarfez Entities are suffering financially or are otherwise unable to comply with the subpoena.  Indeed, though their document production has been defective, the Sarfez Entities have "produced in excess of 1500 pages of responsive discovery material," Resp'ts' Opp'n at 3, in their attempt to comply with the subpoena, and have not complained of undue burden during the course of the production thus far.  Accordingly, and especially given the importance of the requested documents to the larger multidistrict litigation, the benefit outweighs the burden.

       The Court thus finds that the discovery request is not unduly burdensome.

**E.**      **Whether Forensic Imaging of the Sarfez Entities' Computers is Warranted**

       The defendants ask the Court to order the Sarfez Entities to produce their computers for forensic imaging.  Defs.' Mem. at 11-13; Defs.' Reply at 8-11.  "Courts have been cautious in requiring the mirror imaging of computers where the request is extremely broad in nature and the connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated in nature."  Balboa Threadworks, Inc. v. Stucky, No. 05-1157, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006).  But "[w]hile still cautious, many courts now consider requests

---

[3] Although the Sarfez Entities originally filed an unsigned version of Dr. Shah's May 2013 declaration, it was later replaced with a signed version of the declaration.  See ECF No. 11.

for inspection or requests for forensic or mirror imaging of computers to be neither routine nor extraordinary." White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc., No. 07-2319, 2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009) (collecting cases).  Accordingly, although it is inappropriate to order forensic or mirror imaging in order to simply allow a party "to search for additional documents responsive to the party's document requests," courts will order such imaging where there are "discrepancies or inconsistencies in the responding party's discovery responses." Ameriwood Indus., Inc. v. Liberman, 2006 WL 3825291, No. 4:06CV524-DJS, at *4 (E.D. Mo. Dec. 27, 2006) (citing McCurdy Grp. v. Am. Biomedical Grp., Inc., 9 F. App'x 822, 831 (10th Cir. 2001); Simon Prop. Grp. L.P. v. mySimon, Inc., 194 F.R.D. 639, 641 (S.D. Ind. 2000)).

Here, there have been discrepancies and inconsistencies in the Sarfez Entities' document production.  As discussed above, the defendants represent that many emails are missing attachments, that the emails have been produced in a manner that does not allow them to be matched with their attachments, and that parts and versions of documents have been withheld without explanation. Defs.' Mem. at 9-10.  The Sarfez Entities do not dispute these assertions, except to say that the defendants must depose Dr. Shah to discern "whether the reports were received and, if so, what reports they were and where the email attachment[s] [are] now." Resp'ts' Opp'n at 5.  As discussed above, there is no requirement under Rule 45 for a party to depose a custodian of records prior to proceeding with a subpoena for documents.

Far from "search[ing] for additional documents responsive to the [their] document requests," Ameriwood Indus., 2006 WL 3825291 at *4, the defendants have presented ample evidence that the Sarfez Entities' document production is incomplete and otherwise rife with discrepancies.  Nonetheless, because requiring forensic imaging would be a significant intrusion

and would undoubtedly increase the costs associated with production, the Court denies without prejudice the defendants' request for forensic imaging of the Sarfez Entities' computers. Accordingly, the Sarfez Entities should bear in mind that they might be required to bear the cost of forensic imaging in the future if they fail to comply fully with this Court's order that they produce all documents responsive to the defendants' subpoenas.

**F.      Contempt**

The defendants argue that the Court should find the Sarfez Entities in contempt and require them to pay the fees and costs associated with their motion to compel. See Defs.' Mem. at 13; Defs.' Reply at 11.  The Sarfez Entities offer no response.  See generally Resp'ts' Opp'n.

Rule 45 states that an "issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(e).  "[B]ecause the command of the subpoena is not in fact one uttered by a judicial officer, contempt should be very sparingly applied when the nonparty witness has been overborne by a party or attorney." Advisory Committee Note to 1991 Amendment to Rule 45(e).  The Rule provides little in the way of guidance about what constitutes "adequate excuse," stating only that "[a] nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of" the Rule.  Fed. R. Civ. P. 45(e).

Although Rule 45 subpoenas are treated as court orders, see Advisory Committee Note to 1991 Amendment to Rule 45(a) ("Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act of defiance of a court order and exposes the defiant witness to contempt sanctions."), many "[c]ourts have noted . . . that '[b]efore sanctions can be imposed under [the Rule], there must be a court order compelling discovery,'" Penn. Mut. Life Ins. Co. v. Rodney Reed 2006 Ins. Trust, No. 09-CV-

0663, 2011 WL 1636985, at *5 (D. Del. Apr. 29, 2011) (citation omitted); see also Walker v. Ctr. for Food Safety, 667 F. Supp. 2d 133, 138 (D.D.C. 2009) (finding witness in civil contempt after the witness "failed to obey a subpoena and, on top of that, violated a specific court order without legal basis"); In re Application of the Kingdom of Morocco, 2009 WL 1059786, No. M8-85, at *2 (S.D.N.Y. Apr. 16, 2009) ("[C]ourts in the Second Circuit have often held that before imposing sanctions under Rule 45(e) for failure to comply with an attorney-issued subpoena, a court should first issue an order compelling compliance with the subpoena.").  Here, there was no Court order compelling discovery in place, and it is thus inappropriate to find the Sarfez Entities in contempt at this juncture.  The Court will therefore deny without prejudice the defendants' request for a finding of contempt and an order of fees and costs associated with filing the current motion to compel the production of documents.  If the Sarfez Entities do not comply with the Court's order, the defendants may renew their request.

### IV.  CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to compel the production of discovery, except insofar as it seeks an order requiring the Sarfez Entities to submit their computers for forensic imaging, finding them in contempt, and imposing monetary sanctions.[4]

**SO ORDERED** this 3rd day of July, 2013.

REGGIE B. WALTON<br>
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.